**Louis HEIMBACH, as County Executive of Orange County on behalf of himself and all those similarly situated in the Metropolitan Transportation District of the State of New York, Plaintiff-Appellant,**

v.

**Roderick CHU, as Commissioner of New York State Department of Taxation and Finance, and Warren Anderson, as Temporary President of the New York State Senate, Defendants-Appellees.**

**Cal. No. 1193, Docket 84–7067.**

United States Court of Appeals, Second Circuit.

Argued May 11, 1984.

Decided Sept. 17, 1984.

James G. Sweeney, County Atty., Goshen, N.Y., for plaintiff-appellant.

Aven Rennie, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Melvyn Leventhal, Deputy First Asst. Atty. Gen., and Richard G. Liskov, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.

Before OAKES, VAN GRAAFEILAND, Circuit Judges, and BONSAL, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from an order and judgment of the United States District Court for the Southern District of New York (Sweet, J.) dismissing appellant's complaint on motion. The complaint asked for declaratory and injunctive relief based on allegations that the New York Senate's procedure for a "fast roll call" vote violated the Guarantee Clause of article IV, section 4, of the United States Constitution, and, as used in enacting a sales and use tax in the twelve counties served by the Metropolitan Transportation Authority, denied appellant equal protection and due process of law. We affirm.

Rule VIII, section 6 of the New York Senate's Rules of Procedure provides for the passage of bills by "a roll call ... of five Senators, two of whom shall be the Temporary President and the Minority Leader, provided however, that each Senator's name shall be called if requested by five Senators." According to Senate custom, each Senator who is not called in the fast roll call is deemed to have voted in favor of the bill unless he voices opposition to the bill or is considered absent at the time of the vote. Physical absence from the Senate chambers, however, will not prevent a Senator from being considered "present" for purposes of the fast roll call if he was in attendance prior to the call and had not asked the Secretary of the Senate to be excused. Of all the bills passed in 1981, 97.9% were passed by fast roll call. *Heimbach v. State of New York*, 89 A.D.2d 138, 143, 454 N.Y.S.2d 993 (1982) (per curiam).

* Of the United States District Court for Southern District of New York, sitting by designation.

On July 8, 1981, Senator Howard Nolan participated in Senate proceedings until late in the afternoon. Senator Manfred Ohrenstein, the Minority Leader, telephoned Senator Nolan after he left to tell him that the Senate was going to consider a financing package for the Metropolitan Transportation Authority. Senator Nolan told Senator Ohrenstein that he opposed the package but that he would not be returning to the Senate chambers because he was scheduled to undergo surgery the following morning. There is a dispute as to whether Senator Nolan asked Senator Ohrenstein to arrange to have him excused from the proceedings. In any event, this was not done. Senator Nolan was in the hospital when the Senate, by fast roll call, passed the bill now being challenged, Assembly No. 9059, 1981 N.Y.Laws ch. 485, codified at N.Y.Tax Law § 1109. The bill received 31 affirmative votes, the minimum needed for passage, and Senator Nolan was counted as favoring the bill.

On September 17, 1981, appellant brought a class action in New York Supreme Court, Orange County, alleging that section 1109 violated the equal protection rights of taxpayers in Orange and Suffolk counties and that it had not been duly enacted because Senator Nolan opposed the bill and his vote should not have been counted in favor of it. The court, without considering the equal protection claim, declared the statute invalid because it had not received the "assent of a majority of the members elected to each branch of the legislature" as required by article III, section 14, of the New York State Constitution. *Heimbach v. State of New York*, 113 Misc.2d 189, 449 N.Y.S.2d 559 (1982). The Appellate Division, Second Department, reversed. 89 A.D.2d 138, 454 N.Y.S.2d 993. Because appellant conceded in that court that the fast roll call procedure did not violate the State constitution, the court limited its consideration of the disputed roll call to whether Senator Ohrenstein had wrongfully neglected to have Senator Nolan marked "excused". The court refused to intervene in the internal affairs of the Legislature by resolving this dispute. *Id.*

at 148–49, 454 N.Y.S.2d 993. The Court of Appeals followed the same tack, citing N.Y.Legis.Law § 40 as authority for the proposition that "the presiding officer's certificate showing the date and requisite votes for passage of a bill shall be 'conclusive evidence' that the bill was validly enacted." 59 N.Y.2d 891, 892, 465 N.Y.S.2d 936, 452 N.E.2d 1264, *appeal dismissed*, —— U.S. ——, 104 S.Ct. 386, 78 L.Ed.2d 331 (1983).

Appellant then sought a district court judgment declaring that rule VIII, subdivision 6, when combined with the Senate custom which presumes affirmative votes by all "present" Senators, violates the Guarantee Clause of the United States Constitution. Appellant also asked the district court to invalidate section 1109 on the ground that the manner in which it was passed violated the equal protection and due process clauses of the Constitution. The district court dismissed appellant's equal protection and due process claims as improper attempts to challenge a State tax in the federal courts. *See* 28 U.S.C. § 1341. It dismissed the Guarantee Clause claim on the grounds that it was not justiciable and appellant's injury was too abstract to create the standing necessary for bringing suit.

■ The district court's opinion was handed down prior to *Migra v. Warren City School District Board of Education*, —— U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), in which the Supreme Court held that a State court judgment in a section 1983 civil rights action had the same preclusive effect in federal court that it would have had in the State courts. Although appellees in the instant case advanced the defense of *res judicata* in the district court, the court did not rely on that doctrine in dismissing the complaint. This, however, does not preclude us from affirming the district court's judgment on the basis of *res judicata*, if, in fact, *res judicata* is a valid defense. *See Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937). On the teachings of *Migra, supra*, we believe that it is.

New York has adopted the transactional identity approach to *res judicata*, under which a claim that could have been asserted under a given set of facts in a concluded action is barred from being asserted under the same set of facts in a subsequent action. *See Reilly v. Reid*, 45 N.Y.2d 24, 27–31, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978). Application of this doctrine assumes, of course, that the court in which the first action was brought would have been willing and able to consider the theory that is being advanced in the second action. *See Salwen Paper Co., Profit Sharing Retirement Trust v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 72 A.D.2d 385, 391, 424 N.Y.S.2d 918 (1980). Whether it is proper to make that assumption in the instant case depends upon the arguments presented to the New York Court of Appeals and that Court's rulings with respect to those arguments, matters concerning which the briefs in this Court unfortunately are obscure.

Our own review of the State record reveals, however, that the federal constitutional claims relating to the fast roll call never were presented to the New York Court of Appeals. Indeed, appellant did not challenge the fast roll call per se, but only its use in Senator Nolan's "unexcused" absence. Moreover, that challenge was based on article III, section 14 of the New York Constitution, which prohibits the passage of a bill "except by the assent of a majority of the members elected to each branch of the legislature." The Court of Appeals did not, as appellant contends, declare that it did "not have jurisdiction to entertain claims aimed at the number of votes cast or the number of Senators present", nor did it say that it "could not and would not have entertained ... [a] Federal Constitutional claim aimed at the number of votes cast or the number of senators present ...." It simply refused to intrude into the wholly internal affairs of the Legislature. 59 N.Y.2d at 893, 465 N.Y.S.2d 936, 452 N.E.2d 1264.

Legislative proceedings which violate the United States Constitution are not "wholly internal" legislative affairs. *See Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). New York judges and legislators are bound by oath or affirmation to support the Constitution of the United States, U.S. Const. art. VI, cl. 3, and State courts are under the same duty as federal courts to respect rights arising thereunder. *Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5 (1958); *Brown v. Allen*, 344 U.S. 443, 499, 73 S.Ct. 397, 442, 97 L.Ed. 469 (1953); *Testa v. Katt*, 330 U.S. 386, 390–91, 67 S.Ct. 810, 812–813, 91 L.Ed. 967 (1947). The New York Court of Appeals has made it clear that it will not shrink from the adjudication of legal issues simply because a case has political overtones. *See Anderson v. Krupsak*, 40 N.Y.2d 397, 402–04, 386 N.Y.S.2d 859, 353 N.E.2d 822 (1976). Although that Court is reluctant to interfere with the internal procedures of the Legislature, it has stated flatly that "judicial review may be undertaken to determine whether the Legislature has complied with constitutional prescriptions as to legislative procedures." *Board of Education v. City of New York*, 41 N.Y.2d 535, 538, 394 N.Y.S.2d 148, 362 N.E.2d 948 (1977).

Appellant's reliance upon the preclusive effect of New York Legislative Law § 40 is misplaced. Section 40 requires the presiding officer of the New York Senate to certify the date of each bill's passage "and whether [it was] passed by the votes of a majority of all [Senators] or of two-thirds thereof, or of a majority of [the Senators], three-fifths thereof being present." It then provides that "[n]o bills shall be deemed to have so passed unless certified in the manner provided by this section, which certificate to such effect shall be conclusive evidence thereof."

Although section 40 limits judicial review of some alleged deficiencies in legislative proceedings, as it did on appellant's appeal to the New York Court of Appeals, 59 N.Y.2d at 892–93, 465 N.Y.S.2d 936, 452 N.E.2d 1264, section 40 is conclusive evi-

dence only as to the matters certified by the presiding officer. He certifies that the bill "so passed". He does not certify that the method of passage met the requirements of the United States Constitution. *See Franklin National Bank v. Clark*, 26 Misc.2d 724, 745, 212 N.Y.S.2d 942 (1961).

Assuming for the argument only that New York courts would be precluded by New York Legislative Law § 40 from passing upon appellant's challenge to section 1109, there is nothing in section 40 that would prevent the courts from banning the use of fast roll calls in future legislative enactments where no section 40 certification as yet has been made.

■ Whether the New York Court of Appeals would have found merit in appellant's constitutional arguments is a question we need not decide. For *res judicata* purposes, we are interested only in whether argument on the merits would have been heard. Despite the provisions of section 40, we are satisfied that it would have been. *See Board of Education v. City of New York, supra,* 41 N.Y.2d at 538, 394 N.Y.S.2d 148, 362 N.E.2d 948; *Anderson v. Krupsak, supra,* 40 N.Y.2d at 402–04, 386 N.Y.S.2d 859, 353 N.E.2d 822.

Because of the availability of a State court remedy, the district court correctly held that appellant was precluded by the terms of the Tax Injunction Act, 28 U.S.C. § 1341, from challenging section 1109 of the New York Tax Law. Section 1341 reads:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Appellant contends that his claim is not within the Act because its primary challenge is to the legislative procedure rather than the resultant tax. *See Parker v. Merlino,* 493 F.Supp. 381, 386 (D.N.J.1980), *aff'd,* 646 F.2d 848, 852–53 n. 11 (3d Cir. 1981). This argument is not persuasive.

■ The Tax Injunction Act, with "its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations," *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976), "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981). Even if the plea for federal court review rests on constitutional grounds and asks only for declaratory relief, the Act deprives the district courts of jurisdiction to interfere with the State tax. *California v. Grace Brethren Church,* 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982). This jurisdictional limitation, focusing on whether the district court has been asked to "enjoin, suspend or restrain" a State tax, should not depend for its application on the nature of the challenge to the tax, whether it be to the provisions of the taxing statute or to the manner in which the statute was enacted. To the extent that *Parker v. Merlino, supra,* is to the contrary, we decline to follow its reasoning.

■ We need spend little time on appellant's argument that the district court should have considered his challenge to the fast roll call procedure, separate and apart from its use in enacting section 1109. The district court held this claim to be nonjusticiable and appellant without standing to pursue it. *See Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 217, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974); *United States v. Richardson,* 418 U.S. 166, 179–80, 94 S.Ct. 2940, 2947–2948, 41 L.Ed.2d 678 (1974). If, as appellant contends, his generalized and abstract challenge to the constitutionality of the fast roll call is justiciable and he has standing to pursue it, appellant should have made the same challenge in his State court action. As pointed out above, New York Legislative Law § 40 is applicable only where section 40 certifications have been made. If appellant's contentions are correct, the arguments which he would make

in the instant action could have been made in the State court. The doctrine of *res judicata* precludes piece-meal attacks such as are being attempted here.

For all the reasons above-expressed, we conclude that the district court's judgment was correct. It therefore is affirmed.